Good morning. May it please the court. My name is Stan Greenberg. I represent Richard Bailey. Good morning. I'd like to underscore a point, if I can, with the exception of the jury instruction issue on the word willfully. All the problems in this case, both cases, stem from this fundamental fact. There are two discrete charges of alleging illegal distribution of stock in April and May of 2004. They're very self-contained charges. But the prosecution in each case, if they had just tried it on those facts, this case probably would have been behind us. But the prosecution has always been determined to inject the other acts and uncharged misconduct issues. Was there anything other than Exhibit 39 that came in about the 2002 transactions? I believe the answer to that, Your Honor, is no. Okay. So only Exhibit 39 is really at issue with regard to other transactions? I'm sorry. Could you repeat that? So is it only Exhibit 39 that brings in the earlier transactions, or was there other evidence that I have overlooked? I hope I'm not proven wrong, but that's my memory. It was Exhibit 39. That's what I thought, too. So we're talking about whether it was an abuse of discretion to admit Exhibit 39. I think so, yes. And as I cited it, there was no foundation, no authenticity, no business record. It was, in fact, according to the testimony that came out from Mr. Bailey's testimony in front of the SEC in 2006. So what was your specific objection to 39? Wasn't it more in the area of 404b evidence or? 404b, you mean? Yes. I mean, your objection, if – I think obviously the government's arguing that you didn't preserve your objection. But that being said, assuming that you preserved the objection, what was your objection to Exhibit 39? That violated 404b? Well, no. The objection, well, yes, but there's something more fundamental. There was no foundation. It was never authenticated as anything. It was just a document that had been produced by the SEC from Mr. Bailey at the deposition he gave in the year 2006. And he testified that there was a document that he had asked his bookkeeper to put together in anticipation of the litigation, in anticipation of his deposition so he'd have something to refresh his memory from. But he was on record as saying he didn't think it was accurate. So the SEC lawyers saw him refreshing his memory and asked for a copy and got it and gave it to the U.S. attorney. So there was never any kind of a foundation for this document. Well, if your client prepared it, I'm not understanding the authentication problem there. My client did not prepare it. My client testified that he asked that bookkeeper to put together a list of transactions with Mr. Owens. And he used it to refresh his memory. Presumably. It was sitting in front of him at the deposition. The SEC lawyer says, what is that in front of you? And he told her and she said, well, we have a copy and he gave it to her. But there was never any foundation as to how it was prepared. He was on record as saying he thought it was erroneous in several respects. Okay. The reason that Bailey 1 was reversed was because there was a complaint or something introduced that the SEC had filed against your client, right? Bailey 1 was reversed because the improper receipt of a civil complaint alleging the same or similar conduct. All right. So a civil complaint basically would see the inference from that could be that whoever filed the civil complaint, which in this case was what? The SEC. The SEC. That the SEC thought that he had committed those violations. And so that's what the Court reversed on. That wasn't admitted in this trial, correct? It was not. That's correct. Okay. So why is what was admitted? What's the problem with it? Here's the problem. The charges are two, two very discreet charges, one in April, one in May of 2004. Exhibit 39 purports to show similar or the same transactions that are uncharged in the year 2002, 2003, 2004, and 2005, totaling over $2 million. And that is what the government wanted to get in front of the jury, and that's what the government got in front of the jury and thereby argued these people were just using this as a printing press. It's far off. Well, but okay. But what was your client's defense? My client's defense was that he, with respect to the two charges, he gave the stock. And it was for consultation. And he had, and he actually, it was for fees rendered, correct? More for fees anticipate, excuse me, for services anticipated in the future. But it wasn't just a sham to raise capital. He was trying to show that it was legitimate. Correct. It was legitimately done. Well, why then, and I think what the government was offering them for was to say that these people's relationship is not just what happened on the dates in question, it's in order to evaluate the relationship and whether, in fact, the defense, you know, whether he was, in fact, rendering services or whatever, you have to look a little broader, and that they're all, I think they argued that it was all inextricably bound together, and you couldn't just pull those out and isolate only on what was in the charging document. Isn't that right? Isn't that what their argument was? It's part of the argument, and that's a very good question I would submit, Your Honor, theoretically. And the reason I add the word theoretically is this. It wasn't offered that way. It was offered in the alternative, either under 404b as uncharged misconduct or in the alternative as the kind of evidence that you're talking about. But the judge never distinguished. So if we don't know exactly why the judge admitted it, then don't we have to look to see whether it's admissible under some theory? Well, you have to see whether it's admissible under some theory. But under the Ninth Circuit law and the Mayans case, there must be a clear distinction. Those two theories are mutually exclusive. If it comes to that. But if the district court was correct under either theory, we have to affirm. Well, if there was a reason. If there are two reasons offered to the court as to why evidence is admissible and the court simply says, yes, I'll admit it, and one of those reasons is correct, don't we have to affirm? Well, if it was 404b, he didn't go through the correct procedures. If what you're saying is if one of the theories was correct, you still have the problem that there was no foundation for Exhibit No. 39. I have another question about Exhibit 39, and I may be incorrect in my assumption here, so feel free to correct me. There was a deposition that was or some deposition testimony that was admitted in evidence by stipulation. Correct. And the Exhibit 39 was referred to, I think, in the portions of the deposition that were admitted in evidence by stipulation. And if that is so, why doesn't it follow that Exhibit 39 was properly admitted as part of the stipulation about the deposition testimony? For this reason, there was no testimony about Exhibit 39 beyond the colloquy where the SEC lawyer conducting the deposition said to Mr. Bailey, what is that document in front of you? And he explained, it's something I asked my bookkeeper to prepare. I thought I might be asked about this, and I wanted something to refresh my memory. And then they went off the record, and apparently he gave them a copy off the record and she made a copy. And that was the extent of the testimony about Exhibit 39 at the deposition. But that doesn't qualify as any sort of authentication. It's not a business record. And I think the counsel had schooled on that point with a question. So I would understand if there was an objection, the document is not authenticated, no foundation. But if it comes in under stipulation, which is the point Judge Graber was raising, why does that matter? Because we weren't stipulating to Exhibit 39. We were stipulating to the testimony provided by Mr. Bailey as admissions of a party opponent from the government. It was a much longer deposition. It took an entire day. And what we stipulated to was the narrowed down portion that we could agree on that was relevant to this case. I'm sorry. When the exhibit was offered at trial, was there any objection asserted by your client? Well, the judge said he was going to receive it pretrial, at a pretrial hearing, when he said, but I'm going to let it in. Then during the trial, I was kind of taken aback, frankly, when government counsel offered it a second time, because I thought the judge had already allowed it in. And that's where I'm going to address this in my reply brief. I think there's a word missing. What I was attempting to say, and I'm sure in my own mind I did say, was this was an issue we had a foundation about, but there's no further objection. And what I was attempting to reference was the fact that I had objected to it pretrial, but the court had already overruled that. And so there was an objection, yes. Let me, before you run out of time, I wanted to ask something about the jury instruction. Why isn't your position directly answered not to your client's side of the issue by United States v. English? By United States v. what? English. Oh. Our court's case in 1996, which dealt with the question of whether a securities fraud conviction for a willful violation requires that the person know that what they've done is unlawful. And we said that we do not require the government to establish knowledge of illegality. Well, because I think that's been superseded by more recent law, including the Ijoku case, which I cited, a recent decision which says very plainly the following. In other words, in order to establish a willful violation of a statute, it doesn't say a particular statute, it says a statute, the government must prove that the defendant acted with knowledge that his conduct was unlawful. Except has English, which is very specific to securities fraud, ever been overruled by this Court en banc, or is it insufficiently inconsistent with a Supreme Court case that is no longer good law? To my knowledge, it's never been overruled. And there is a body of cases out there. I know the Tarallo case, the Reyes case. And, actually, I'm glad you asked that. I spent an awful lot of time going back through the history of that jury instruction in the various panels of this Court, trying to figure out what the Court had in mind when they said you don't have to know it's unlawful, you only have to know it's wrongful, because the words are synonyms of one another. If you look up wrongful in any dictionary, it says unlawful. So it's not saying anything. And I've run into this at the district court level. I always ask the district court, if you're going to give that instruction, please give a definition of wrongful. And they always say, well, how should I define it? And I say, look in the dictionary. They look in the dictionary and they see it means unlawful. And I say, well, that contradicts the instruction. I can't give it. And that instruction has never made any sense to me. And I don't know what the Court had in mind when they crafted that instruction, because, like I said, it doesn't make sense. It says you don't have to know it's unlawful. You only have to know it's unlawful. And if you look it up, that's what it says. And I'm perplexed because, like I said, I spent a lot of time trying to figure out what the various panels of the Court had in mind, and I'm as perplexed as ever. If I could just say. Sotomayor You have about a minute and a half if you'd like to reserve it for that. I'd like to save it if I can. Sure. Unless you have some questions. Good morning, Your Honors. Ms. Angela Davis for the United States. Good morning. With the Court's indulgence, I think it might be helpful to just spend about a minute going over what's actually in the record, in particular with respect to this Exhibit 39. Exhibit 39, which actually is included in the excerpts of record and defendant's is a sort of spreadsheet or chart of purported stock payments by the defendant to Mr. Owens during 2004 mostly, and the last page of it includes some payments in 2002, actually from December 2002. And 2003. To 2003, totaling only $278,000. The heart of this case and the heart of the government's case in chief in closing argument was that during April and May of 2004, the defendant paid over $1 million worth of stock to Owens, and that the evidence, the government argued, showed that Owens was not paid that stock as payment for bonafide services. Rather, Owens was used as a conduit to raise capital for Gateway, and that was established by the transfers very quickly of proceeds from those stock distributions to Owens. And so his defense was that what you had charged him with the violations, that those were, in fact, bonafide services, and so he was not paid that stock.  And I'm just wondering if you have a different view than your purpose in offering Exhibit 39 at Bailey 2, I guess, would have been, it was, and what are the court rule? And let me also just take a moment to explain what the motion in Limine was about, because it was not about Exhibit 39. Exhibit 39 came into evidence unredacted, with no objection in Bailey 1, and no claim of error on appeal to an unredacted incarnation of Exhibit 39. At the motion in Limine hearing, which was also included in the defendant's excerpts of record, the parties both told the court that they were. Are the motion in Limine, are we in Bailey 1 or Bailey 2? Bailey 2, excuse me, Your Honor. Okay, Bailey 2. Thank you, Judge Kagan. I'm sorry. In the case of Limine, as Justice Kagan noted, the defense sought to impeach the case agent who had told the grand jury that Owens and the defendant had no consulting agreement, thus indicating perhaps a sham transaction. In Bailey 1, the defendant sought to impeach the case agent by showing that there had, in fact, been a consulting agreement. And the defense sought to impeach the case agent by showing that there had been a consulting agreement that dated from 2002 and 2003. Sotomayor, why does it matter what happened in Bailey 1? Bailey 1 was as a done deal. We're starting over. And the fact that an objection wasn't made to Exhibit 39 in the first trial doesn't mean that it can't be objected to in the second trial. It's a whole new trial from the get-go. So for both sides, you can introduce different things, they can introduce different things, you can object to different things. So I'm not really sure what you're trying to show us by going back to Bailey 1 and saying, well, he didn't object back then. I'm not sure where that gets us. What I'm trying to explain is the context in which the government moved earlier at a pretrial phase in Bailey 2 to introduce evidence of additional transactions going back in time to 2002. And it's there in the transcripts of that hearing that the government made reference to the fact that during the earlier trial, the past course of conduct and transactions between these two men came into evidence. And that's why the government wanted to. Okay. But you have Bailey 1 is relevant to me only in the fact that it was reversed. All right. By 2 to 1. But it was reversed. And the reason it was reversed is because you introduced a complaint by the SEC, right? Correct. Okay. So that's going to be law of the case. You can't introduce that complaint, right? Of course. Right. Okay. So in Bailey 2, that's what we have to look at right now. What is, you know, what's in contention here? What was wrongfully admitted from, you know, what did you try to admit that they're objecting to? And I would submit, Your Honor, that nothing was improperly admitted in Bailey 2, that both parties. Okay. But what was it? What is at the heart of this? Is it Exhibit 39? The government did not make a motion to admit Exhibit 39 in Bailey 2. It is actually not correct to say that the judge made a finding or a ruling about Exhibit 39 at the pretrial hearing. That's not what the pretrial hearing was about. At the pretrial hearing, the government moved to introduce evidence of past transactions going back to 2002. The government was not moving to admit Exhibit 39 because the government was assuming that it was going to come in just as it came in in the first trial. But Exhibit 39 includes a reference to one transaction in 2002 and two transactions in 2003 that we talked about earlier. And I want to be sure that I understand your answer to Judge Callahan. Is there anything else in Bailey 2 that was admitted in evidence other than Exhibit 39 that concerns earlier transactions? Or is that the only piece of evidence about earlier transactions? Both parties mentioned the fact that Owens and the defendant had a prior relationship that went back to 2002. But is that the only specific mention of a transaction is Exhibit 39? Yes, Your Honor. Okay. So we're talking about those three lines on one page in Exhibit 39. Yes, Your Honor. And just one other thing. And was there any objection to Exhibit 39 when it was offered? Absolutely. In evidence at Bailey 2. Excuse me, Judge Gold. Excuse me, Judge Gold. I didn't mean to interrupt you. There was absolutely no objection. And indeed, the way that it came into evidence was the SEC attorney had been reading the stipulated excerpts of the deposition, and those stipulated excerpts of the deposition make very clear reference to this exhibit, which was Exhibit 114 in the SEC deposition. The redacted incarnation became Exhibit 39. And notably, the way that the testimony came in, it didn't even say that Exhibit 39 was entirely accurate. What happened was this. The government asked the SEC attorney if she recognized Exhibit 39. And she said, based on my recollection, this is a copy of the document that was used during the deposition except for that some portions appear to be redacted. The government asked, so without stating the accuracy of this document, this document is referenced in the deposition excerpts that you are going to read. And the witness said that's correct. The government moved Exhibit 39 into evidence. And the only thing, and the Court specifically inquired, the Court actually asked defendant any objection, and that is in the record, on page 344 of the defendant's excerpts of record. And this was the response. The response was, this was one we had a foundation question on, but I have withdrawn it, Your Honor, so no objection to the redacted version. Thank you. Why isn't that the end of the, why isn't that, if that's what was said, and it wasn't objected to at the pretrial hearing, why isn't that the end of the case? Your Honor, the government would agree that that should be the end of the case. On that evidence issue. Now, the appellant argued that there was an objection because he had objected at the pretrial motion in Bailey 2, in the motion in Limine. So how do you address that? The motion in Limine did not seek admission of Exhibit 39. The hearing on the motion in Limine did not even reference Exhibit 39. The motion in Limine was about introducing other sham transactions that occurred prior to the sham transactions that were the heart of the government's case. And the motion in Limine did make reference to Exhibit 39 having come in at the prior trial because the government was arguing it's going to come into evidence anyway that these men had a relationship that went back to 2002 or 2003. Would you address the jury instruction issue as well? Your Honor, first of all, I think it's fair to say that the Court need not reach the willfulness issue in this case, because in this case, the defendant stipulated that he at all relevant times knew and understood the essay rule in the securities law issue, and that stipulation was read into the record. I don't understand why that gets you there, because let's say he said that and then said, but I asked my lawyer if this was okay, and she said it was fine. So the fact that you know what the law requires, I don't see that that necessarily equates with knowing that you have violated the law. He didn't stipulate to that. He simply said he knew what the law required. So I think it's apples and oranges. Well, in addition to stipulating that he knew what the law was, there was also the defendant's opening statement in which he went into some detail about his knowledge and understanding of the law and his knowledge that the S-8 rule required that he could only pay stock to people if it was for bona fide services and not in connection with raising capital, and that is the rule that he admitted he understood. Would you answer my question directly as to whether the jury instruction was correct or incorrect, and then explain your answer? The jury instruction was absolutely correct under controlling precedent of this Court. The standard of willfulness under both the Securities Act of 1933 and the Securities Exchange Act of 1934 is that willfulness means intentional commission of an act that the person knows is wrongful, and the Court has repeatedly rejected arguments similar to the one made here that willfulness requires the defendant's conscious knowledge that he is, in fact, violating the law. The Ajoku case, which the defense has raised in the 28J letter, is distinguishable because Ajoku deals with statutes in which Congress has criminalized conduct that is both knowingly and willfully undertaken. And it's not just knowingly.  It's knowingly. And it comes in under knowingly. Yes. I mean, and there's a discussion in particular in Tarallo about that, about how the Court is, of course, not going to assume that Congress doesn't mean what it says or that Congress is throwing in a word for no reason. And the distinction that is made is that willfully and knowingly means knowing a statement is false and acting with deliberate intent, then willfully would be surplusage unless it meant in the context of those statutes consciousness that one is violating the law. But the law, as it has developed in the Ninth Circuit as well as in the Second Circuit and every circuit that we have looked at, under both the 77X provision of the Securities Act and the 78FF provision of the Securities Exchange Act means knowingly undertaking a wrongful act or undertaking an act that the defendant knows is wrongful. In other words, Your Honor, it's classic mens rea. And we have not, I have not seen a single case to say otherwise. Well, what do you say about English? English is entirely consistent with our position. In English is a case interpreting the 77X penalty provision, which is the penalty provision here. In addition, United States v. Brown, which is cited by this Court in United States v. English, reached the same conclusion, that a defendant need not know he was selling securities, implicitly recognizing that the statute does not require knowledge of the illegality. And in addition, this Court in Tarallo and the Second Circuit more than once, in United States v. Peltz, Judge Friendly writing, and in at least one additional opinion by the Second Circuit, United States v. Dixon, again, Judge Friendly writing, cite the 1934 Virginia Law Review article by Herlins, which goes into quite a lot of depth about what willfully meant in the 1934 Securities and Exchange Act. And it's a very strong argument that it means intentionally doing a wrongful act. There is a no-knowledge defense in the penalty provision of the 77F, and which makes it impossible for willfully to mean consciously violating the law under the context of the 1934 Securities and Exchange Act. And the Herlins article makes the point that the 1933 and 1934 legislation came out of the same congressional committees based upon the same fact-finding investigation and the same context of securities reform. So the legislative history, all precedent of this Court, all precedent of the Second Circuit and other courts that I could find, say the same thing. Willfully in the securities law context is classic mens rea. Thank you, counsel. Mr. Greenberg, you have some time remaining. Thank you. I just want to make two quick points, if I can. One on the word willfully. I would disagree. I think this is an area that's kind of in flux because of Ijoku. But if you go back and look at the Solicitor General's confession of error before the Supreme Court when Ijoku was on cert pending there, and then look at the decision which I filed with the Court with the Rule 28 letter, there's no such limitation. It just says any statute has to know it was unlawful. The other point I wanted to make is to get back to Exhibit 39. I take issue with what counsel said. The pretrial motion specifically mentioned trial Exhibit 39 and asked that it be admitted. And you can go look at that. I think you'll find it at Defendant's Excerpt of Record, pages 42 to 52. It's the court document number 176. And certainly I thought when the judge said that I'm going to let it in, I thought he was letting it in. Now, it is correct. I know what the transcript says. It quotes me as saying no objection. But I've addressed that in my reply brief. I do believe that's an error. What I said was there's no further objection because I was trying to reference ñ I didn't want to say in front of the jury you already ñ I already objected to the pretrial and you said this could come in, Your Honor. So my position still is that there was no proper authenticity or admissibility of a trial of Exhibit 39. Thank you, counsel. The case just argued is submitted.
judges: Graber, Gould, Callahan